UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTENSEN SHIPYARDS, LTD., a Washington corporation,

        Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE CO., a foreign corporation, and NAVIGATORS INSURANCE CO., a foreign corporation,

        Defendants.

CASE NO. C06-0641-JCC

ORDER

## I. INTRODUCTION

This is an insurance action in which Plaintiff Christensen seeks to recover the money it paid to settle a lawsuit brought against it in the Southern District of Florida ("the Underlying Litigation"). This matter comes before the Court on the parties' cross motions for summary judgment. Plaintiff Christensen moved for partial summary judgment on the issues of "estoppel, breach of duties, and bad faith." (Dkt. No. 141.) Defendant St. Paul moved for summary judgment on all claims.[1] (Dkt. No. 133.) After

---

[1] The Court finds no materially new arguments made in Plaintiff's revised opposition brief (Dkt. No. 193) in response the this Court's Order striking the originally filed overlength brief (Dkt. No. 175). Accordingly, the Court denies Defendant's request to strike Plaintiff's revised opposition brief (Dkt. No. 195), and will treat the amended opposition as the operative one for purposes of this Order.

ORDER – 1

considering the parties' relevant submissions on the matter and determining that oral argument is unnecessary, the Court finds and rules as follows.

**II.    BACKGROUND AND FACTS**

Plaintiff Christensen is a builder of luxury yachts. One of those yachts was purchased by Eldrick "Tiger" Woods, a well known professional golfer. Tiger Woods, his wife Elin Woods, and the corporate entity through which the yacht was purchased sued Plaintiff Christensen in the Southern District of Florida. The plaintiffs in that lawsuit (who shall be referred to collectively as "the Woodses" for purposes of this Order) alleged that Plaintiff Christensen had breached their contract and violated the Woodses' privacy rights by conducting a "marketing campaign" trading on Tiger Woods's notoriety in order to promote its yacht-building business. (Second Amended Compl. in the Underlying Litigation (Dkt. No. 159-3 at 80).) The complaint was amended two times during the course of the litigation to add additional breach of contract and privacy-related claims. (*See* discussion *infra* Section IV(B)(1)(b).)

Defendant St. Paul was Plaintiff Christensen's insurance carrier. Shortly after receiving notice of the lawsuit, Defendant St. Paul agreed to provide a legal defense to Plaintiff Christensen in the Underlying Litigation, but reserved the right to contest coverage. It did so by issuing a "notice of reservation of rights" letter stating that some of the conduct forming the basis of the lawsuit may not have been covered under the insurance contract because it was "intentionally undertaken for commercial purposes, constitute[d] a violation of a commercial contract, or [was] due to the violation of Florida law." (Dkt. No. 159-3 at 111.) Defendant St. Paul provided Plaintiff Christensen with independent defense counsel subject to that reservation of rights.

Plaintiff Christensen's Insurance Policy with Defendant St. Paul stated that it does not cover actions for breach of contract. (Insurance Policy 22 (Dkt. No. 8-2 at 4) ("This insurance does not apply to: . . . . Contractual Liability").) It does, however, state that "personal and advertising injury" is covered. (Insurance Policy 33 (Dkt. No. 8-2 at 15).) According to the policy, "personal and advertising injury" includes injury arising out of "[o]ral or written publication, in any manner, of material that violates a

ORDER – 2

person's right of privacy."(Insurance Policy 18-19 (Dkt. No 8-1 at 30-Dkt. No. 8-2 at 1).) The term "right of privacy" is not more specifically defined in the policy. The Woodses' lawsuit alleged both contract and privacy-related claims. (*See* discussion *infra* Section IV(A).)

Defendant St. Paul makes a number of allegations that Plaintiff Christensen was not completely transparent regarding its conduct during the Underlying Litigation. Specifically, Defendant alleges that Plaintiff did not inform Defendant (1) that Plaintiff had entered into a protective order with the Woodses (Def.'s Mot. for Summ. J. 5-6); (2) that the Woodses' counsel had suggested that his clients were merely interested in an apology and recovering their attorneys' fees (*id.* at 6-8); (3) that Plaintiff Christensen's officers believed that they had breached the contract (*id.* at 8), and (4) that Plaintiff Christensen's defense counsel in the Underlying Litigation ghostwrote a letter for Plaintiff Christensen's coverage counsel in the insurance-aspect of this lawsuit, (*id.* at 9-10).[2] Plaintiff disputes all but the last of these allegations.

Plaintiff Christensen, for its part, asserts that Defendant St. Paul did not update its reservation of rights letter even though the complaint was amended several times. (Pl.'s Mot. for Partial Summ. J. 6.) It also asserts that Defendant did not share with it a "coverage opinion" that Defendant St. Paul obtained from its own attorneys regarding the matter. (*Id.*) Defendant St. Paul does not dispute the factual basis for these claims.

Approximately seventeen months into the lawsuit, on March 26, 2006, Defendant St. Paul's claims adjuster Donna Zeller spoke with Plaintiff Christensen's counsel Phillip Marshall. (May 7, 2007 Decl. of Philip Marshall ¶ 2 (Dkt. No. 142).) During their conversation, Ms. Zeller stated that she wanted to discuss dividing up the costs of the legal defense in the Underlying Litigation, though no specific figures were proposed. (*Id.* at ¶ 3.) She stated her position on behalf of Defendant St. Paul that the

---

[2] While the evidentiary support for many of these contentions is questionable, the Court finds it unnecessary to discuss the evidentiary bases for each of these claims in detail because resolution of these facts are unnecessary to reach the Court's conclusion. These facts are only material to support Defendant's arguments in support of its motion for summary judgment on its breach of contract claim. However, even if the Court takes Defendant's facts as characterized in its brief, Defendant would still not be entitled to summary judgment on this issue. *See* discussion *infra*.

ORDER – 3

contract-based claims were likely not covered under the policy but that the privacy claims were. (*Id.* at ¶ 4.) She then agreed to provide a written proposal within one week. (*Id.* at ¶ 5.) However, the written proposal was not received until approximately one month later. (*Id.*) Defendant proposed that "costs should be shared between St. Paul and Christensen on a 1/3 basis for St. Paul and 2/3 for Christensen." (April 19, 2006 Letter from Donna Zeller to Casey Marshall (Dkt. No. 143-5 at 34).) The letter was not received until the Friday before a Monday mediation between the parties to the initial lawsuit. (Marshall Decl. ¶ 5 (Dkt. No. 142).)

A mediation in the Underlying Litigation was conducted on April 24, 2006, with representatives from Plaintiff Christensen, the Woodses, and Defendant St. Paul. At one point, Defendant St. Paul's representative "left" the mediation room and went to the mediation office (Wade Dep. 93:1 (Dkt. No. 159-3 at 230)), at which time Plaintiff Christensen agreed to a tentative settlement with the Woodses. The settlement was contingent upon being able to resolve the coverage issues with Defendant St. Paul within 48 hours. (Wade Dep. 93:7-25 (Dkt. No. 159-3 at 230).) Someone then told Defendant St. Paul's representative that he could leave the mediator's office because a settlement had been reached. (*Id.*) Plaintiff Christensen then requested that St. Paul agree to fund the recently negotiated settlement. (*Id.*) After attempting unsuccessfully to obtain Defendant's consent to fund the settlement at the end of that 48-hour period, Plaintiff nevertheless agreed to the settlement.

On May 4, 2007, Defendant St. Paul filed a lawsuit in the Southern District of Florida seeking declaratory relief that it was not obligated to fund the settlement. In that complaint, it disclosed facts regarding the settlement that Plaintiff now argues were confidential. (Original Compl. (Dkt. No. 1) in *St. Paul Fire & Marine Ins. Co. v. Christensen Shipyards Ltd.*, No C06-21133 (S.D. Fla. May 4, 2006).) That lawsuit was ultimately stayed and administratively closed after Plaintiff Christensen filed the instant lawsuit. (August 28, 2006 Order (Dkt. No. 26) in C06-21133.) Shortly after that initial lawsuit was filed, Defendant St. Paul paid all of Plaintiff Christensen's defense costs in the Underlying Litigation. (Carr Decl. ¶ 5 (Dkt. No. 143).)

ORDER – 4

In this action, Plaintiff Christensen asserts claims against Defendant St. Paul for breach of the insurance contract, bad-faith failure to settle, violations of the Washington Consumer Protection Act ("CPA"), public disclosure of private facts, and for attorneys' fees associated with this lawsuit. (Compl. (Dkt. No. 1).)

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure states that a party is entitled to summary judgment in its favor "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The moving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250.

## IV. ANALYSIS

### A. Breach of Contract: Defendant's Motion for Summary Judgment for Breach of Contract

Defendant moves for summary judgment on Plaintiff's breach of contract claim. Plaintiff's claim states: "St. Paul has breached its obligations under its insurance policies by failing to pay sums which Christensen is obligated to pay to settle the Underlying Lawsuit, and failing to pay for the costs to defend said suit . . ." (Compl. ¶ 31 (Dkt. No. 1).) It is undisputed that Defendant did, in fact, pay Plaintiff's costs

ORDER – 5

to defend the Underlying Litigation. Thus, the only issue is whether Defendant breached the insurance contract by failing to pay for the settlement in the Underlying Litigation.

"When an insurer refuses to settle a claim the insured may negotiate a settlement on its own and then seek reimbursement from the insurer." *Chaussee v. Md. Cas. Co.*, 803 P.2d 1339, 1342 (Wash. Ct. App. 1991). *See also St. Louis Dressed Beef & Provision Co. v. Md. Cas. Co.*, 201 U.S. 173 (1906) (discussing a contract-based action seeking to recover an insured's cost of settlement). However, under a contract theory of liability, a breach of contract only arises to the extent that there is coverage under the insurance policy for the relevant claim. *See Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 659 P.2d 509, 513 (Wash. 1983) (holding that an insurer's failure to pay a covered claim constitutes breach of contract).

Defendant argues that it did not breach the insurance policy contract because the insurance policy did not cover breach of contract claims, and that the settlement in the Underlying Litigation was only made in order to resolve breach of contract claims between Plaintiff and the Woodses. In addition to the contract-based claims, the Woodses asserted the following privacy-related claims: (1) a violation of Florida Statute § 540.08 (for misappropriation of a person's name or likeness); (2) a violation of the common law right of publicity; (3) invasion of the Woodses' right to privacy and seclusion. (*See* Third Amended Compl. in the Underlying Litigation (Dkt. No. 143-4).) Defendant does not appear to dispute that these privacy-related claims were covered under the insurance policy.[3] Nevertheless, Defendant argues that the value of these claims did not represent *any* fraction of the cost of settlement, and therefore it is entitled to summary judgment on this breach of contract claim. As evidence for its position, Defendant cites the fact that the Underlying Litigation was settled for the Woodses attorneys' fees.

---

[3] Although it notes that such claims are "arguably" covered (Def.'s Reply in Supp. of Mot. for Summ. J. 5), Defendant does not attempt to refute either the plain language of the contract covering "personal or advertising injury" arising out of "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."(Insurance Policy 18-19 (Dkt. No 8-1 at 30-Dkt. No. 8-2 at 1).) It likewise does not refute Plaintiff's detailed analysis of this straightforward policy language. To the extent Defendant does dispute this interpretation of the contract, the Court finds it unnecessary to conduct its own detailed analysis of this contractual language and holds that such privacy-related claims were covered under the policy.

ORDER – 6

Attorneys' fees were only available for breach of contract claims—not for the privacy claims. Plaintiff disputes that the privacy claims would not have entitled it to attorneys' fees.

As an initial matter, the Court notes that attorneys' fees would not be available for the privacy claims, contrary to Plaintiff's contention. The only reason Plaintiff offers for why the Woodses would have been entitled to attorneys' fees in the Underlying Litigation is that they are provided for under Washington Revised Code § 63.60.060. However, the Woodses did not assert a violation of Washington's privacy laws. Rather, they asserted claims based on Florida Statute § 540.08, under which attorneys' fees are not available. Plaintiff's argument that the Court should consider the possibility that the Woodses might have amended their complaint in order to assert a violation of Washington law because the Florida court "suggested without deciding that Washington law might apply to some or all claims" is unpersuasive. (*See* Pl.'s Opp'n to Def.s' Motion for Summ. J 5 n.2.) First, the Florida court merely said "[t]he forum selection clause of the Contract states that the *Contract* shall be governed by Washington law." (Sept 23, 2005 Order in Underlying Litigation 5 n.2 (emphasis added).) Plaintiff does not explain how the *tort* law privacy claims would be based on anything but Florida law, and indeed such a suggestion runs contrary to the Florida court's interpretation of the privacy claims as potentially implicating that state's interests in litigating disputes under Florida law in its own forum. (*Id.* at 24-25.) Second, it would be speculative for this Court to begin to theorize about any claims which the Woodses could have (but did not) assert and how such counterfactual claims may have affected the parties' settlement negotiations—especially without any evidence that such claims were even considered. Accordingly, attorneys' fees were only available for the contract-related claims; they were not available for the privacy torts. Thus, the two different types of claims presented different risks based on the damages that were available should the Woodses have prevailed.

Nevertheless, even though Defendant is correct that damages were only available for the breach of contract claims, this Court cannot presume at summary judgment that this matter was settled solely for attorneys' fees simply because the numerical value of the cash settlement is the same as the claimed

ORDER – 7

attorneys' fees. The relative risk of exposure that each claim posed to Plaintiff Christensen is a factual question, and at summary judgment this Court must view the facts in the light most favorable to the non-moving party. Attorneys' fees may have simply provided readily ascertainable number from which the parties in the Underlying Litigation could construct a settlement agreeable to both sides by providing a seemingly objective number on which to base their negotiations. The Court cannot assume at summary judgment that the privacy claims represented *no* portion of the settlement.

Defendant argues in the alternative that even if it was liable for all or part of the settlement that Plaintiff's breach of the cooperation clause of the insurance policy negates coverage because the alleged breach caused prejudice to it. "The burden of showing the actual prejudice is on the insurer, and it is a factual determination." *Public Utility Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 881 P.2d 1020, 1029 (Wash. 1994). Defendant relies on *MacLean Townhomes, LLC v. American States Ins. Co.*, 156 P.3d 278, 280 (Wash. Ct. App. 2007), and *Key Tronic Corp. v. St. Paul Fire & Marine Ins. Co.*, 139 P.3d 383, 386 (Wash. Ct. App. 2006) for the proposition that such claims may be dealt with on summary judgment. However, both *MacLean Townhomes* and *Key Tronic* dealt with situations where insurance companies were completely prevented from conducting a meaningful investigation and thus could not determine the extent of possible liability. For example, in *Key Tronic*, the Court noted that the plaintiff's delayed notice to the insurance company, and its actions of "dispos[ing] of the evidence needed to evaluate and present a coverage defense" in the meantime, prejudiced the insurance company as a matter of law. *Key Tronic*, 139 P.3d at 386.

Here, in contrast, prejudice is not so straightforward because Defendant had the ability to conduct a significant investigation. Defendant alleges Plaintiff violated the cooperation clause in several ways. However, many of these allegations rely on disputed factual allegations that cannot be disposed of on summary judgment, such as arguments that Plaintiff did not notify Defendant of statements by the Woodses' counsel that the Woodses were not litigating for financial gain, and that Plaintiff did not tell Defendant that Plaintiff believed it had breached its contract with the Woodses. Even if Plaintiff was able

ORDER – 8

to demonstrate that any of the remaining undisputed actions—that Defendant was only given two days to approve the settlement, that Christensen's defense counsel "ghostwrote" a letter for Christensen's coverage counsel, or that Plaintiff withheld certain documents as "confidential" pursuant to a protective order it unilaterally entered into with the Woodses—constituted a violation of the cooperation clause, there still would be genuine issues of material fact as to the nature and extent of any prejudice such conduct imposed on Defendant. Thus, even assuming for the sake of argument that any of the Plaintiff's alleged conduct breached the cooperation clause, Plaintiff has failed to meet its burden at summary judgment of demonstrating prejudice as a matter of law. Accordingly, Defendant cannot show as a matter of law that Plaintiff's conduct necessarily voids coverage. Defendant therefore is not entitled to summary judgment on the breach of contract claim.

### B. Bad Faith

While the parties generally refer to a "bad faith" claim, there are actually several different bad faith claims based on separate factual allegations. Both Plaintiff and Defendant move for summary judgment on these bad faith claims, and each shall be addressed separately.

#### 1. Plaintiff's Motion for Summary Judgment on the Issue of Estoppel Based on Defendant's Alleged Bad Faith Failure to Properly Issue a Reservation of Rights

Plaintiff Christensen argues that it is entitled to summary judgment on the issue of estoppel because Defendant St. Paul "failed to reserve its rights and is therefore estopped from denying coverage irrespective of bad faith." (Pl.'s Mot. for Partial Summ. J. 12.) Defendant issued a "Notice of Reservation of Rights" on November 17, 2004, which states:

> A preliminary review of the Complaint brought against Christensen indicates that it alleges the wrongful conduct alleged as the basis for liability was intentionally undertaken for commercial purposes, constitutes a violation of a commercial contract, or is due to the violation of Florida law. The allegations of liability in the Complaint may not be covered by the Policy.

(Dkt. No. 159-3 at 111.)

Plaintiff argues that this reservation of rights was legally insufficient due to its vagueness, relying

ORDER – 9

on *Weber v. Biddle*, 483 P.2d 155 (Wash Ct. App. 1971.) In *Weber*, a Washington appellate court held that "a general notice of reservation of rights failing to refer specifically to the policy provision upon which the insurer wished to rely may be insufficient to prevent a waiver or estoppel from arising from the insurer's control of the defense of the suit brought against the insured." *Id.* at 159 (quoting 16A J. Appleman, Insurance Law & Practice § 9377 (rev. ed. 1968)). Applying the announced rule to the facts before it, the *Weber* court held that the reservation of rights in that case was "general in nature" because "it [did] not state the specific policy defenses upon which the insurer intend[ed] to rely." *Id.*; *see also Specialty Surplus Ins. Co. v. Second Chance, Inc.*, 412 F. Supp.2d 1152, 1167-68 (W.D. Wash. 2006) (Coughenour, J.) (holding that generally worded reservations such as simple reservations of "all defenses" are legally insufficient under *Weber* but that specific reservations of policy defenses such as a "scope of employment" defense may be sufficient if timely made). Here, Plaintiff argues that Defendant's failure to "quote the policy provisions" from the insurance contract likewise makes the reservation void for vagueness.

Plaintiff's reliance on *Weber* is misplaced. Here, the reservation of rights letter clearly indicates that one of the claims in the Underlying Litigation is for breach of contract, which may not be covered under the insurance policy. The reference to the absence of policy coverage for breach of contract claims provided sufficient notice for the specific policy defenses upon which Defendant intended to rely, which is all that is needed to properly issue a reservation of rights. While it is true that the letter does not contain verbatim quotations of, or pinpoint citations to, the precise section numbers of the policy under which contractual damages were expressly excluded, such hyper-technical notice is not required where the basis for the denial of coverage is readily apparent from even a cursory reading of the insurance policy.

Thus, Defendant properly issued a reservation of rights and it is not now estopped from denying coverage as a result of any alleged deficiencies in its reservation. Plaintiff thus cannot obtain summary judgment in its favor on this issue.

//

ORDER – 10

### 2. Plaintiff's Bad Faith Claim for Defendant's Failure to Properly Communicate Before and After Settlement

Plaintiff argues it can prove bad faith as a matter of law based on Defendant's undisputed conduct. Whether Defendant committed a particular act is a question of fact that, if disputed, cannot be disposed of on summary judgment; however, whether any particular factual situation gives rise to a claim of bad faith is a question of law for the Court. *Leingang v. Pierce County Med. Bureau, Inc.*, 930 P.2d 288, 297 (Wash. 1997). Both CPA and non-CPA bad faith claims against an insurer are similar. *Am. Manufacturers Mut. Ins. Co. v. Osborn*, 17 P.3d 1229, 1234 (Wash. Ct. App. 2001). Under a CPA-based theory, Plaintiff must show "(1) an unfair or deceptive act or practice in trade or commerce that impacts the public interest, and (2) resulting injury to the claimant's business or property." *Id.* Under a non-CPA-based theory, Plaintiff must demonstrate (1) breach of a duty and (2) injury. *Id.*

#### a.   WAC-Based Claims

Plaintiff initially relies on alleged violations of the Washington Administrative Code ("WAC") to establish the first element under either theory. Violations of these regulations constitute *per se* unfair trade practices under the CPA and breaches of the duty of good faith. *Id.* Thus, assuming Plaintiff is able to demonstrate such a violation, it need only show injury in order to establish liability under either theory.

#### i).   WAC 284-30-330(2)

First, Plaintiff alleges Defendant violated WAC 284-30-330(2) for "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." WAC 284-30-330(2). In addition to arguing that the reservation of rights was not sufficient (which has already been addressed in the preceding section) Plaintiff asserts the Defendant violated this WAC regulation by failing to update Plaintiff regarding coverage developments. Specifically, Plaintiff alleges (1) that Defendant failed to update its reservation of rights as the Woodses amended their complaint, (2) that Defendant did not disclose an internal opinion drafted by Defendant's own attorneys regarding its attorneys' assessment of the insurance claim, and (3) that Defendant did not properly communicate with Plaintiff regarding the relative amount of the defense costs that each party would pay.

ORDER – 11

Plaintiff's first "failure to communicate" claim for failure to update Plaintiff as the Woodses amended their complaint is meritless because it does not demonstrate how any such revision was necessary. The Original Complaint in the Underlying Litigation was amended twice in ways immaterial to the policy defenses claimed under the reservation of rights. The Original Complaint listed causes of action by Tiger Woods and Privacy Ltd for (i) injunction and damages for breach of contract, and (ii) injunction and damages under Florida Statute § 540.08 for unauthorized publication of name or likeness. (Compl. in the Underlying Litigation 6-11 (Dkt. No. 159-3 at 26-31).) The First Amended Complaint added the same privacy claims previously asserted by Tiger Woods on Elin Woods's behalf; it also added claims by both Tiger and Elin Woods for violation of the common-law right to privacy. (First Amended Compl. in the Underlying Litigation (Dkt. No. 159-3 at 33-57).) The Second Amended Complaint further added claims for breach of oral contract by Tiger Woods and for violations of the common law right to privacy and seclusion of both Tiger and Elin Woods. (Second Amended Compl. in the Underlying Litigation (Dkt. No. 159-3 at 76-109).) Thus, all of the revisions merely added either a different plaintiff for the previously asserted claims or asserted slightly different legal bases for previously asserted contract and privacy claims. Any amendments to the Original Complaint in the Underlying Litigation did not leave any doubt as to which claims it disputed because its original reservation of rights was predicated upon the same rationale of denying contract-based claims that Defendant still maintains to this day. Whether the contract-based claims were oral or written, or whether the privacy claims were asserted by a different plaintiff is immaterial. Further, Plaintiff Christensen was equipped with separate counsel in the Underlying Litigation that updated it on the ongoing status of the litigation. Thus, Plaintiff was not simply left in the dark as to the status of the claims as they evolved.

Plaintiff likewise fails to demonstrate any breach of the WAC regulations with regard to Plaintiff's second "failure to communicate" claim, which alleges that Defendant wrongfully refused to provide Plaintiff with its internal "coverage opinion." Defendant St. Paul obtained a legal opinion from its attorneys in this case that it did not share with Plaintiff Christensen. (Zeller Dep. 58:17-59:15 (Dkt. No.

ORDER – 12

143-5 at 6-7) However, Plaintiff points to nothing in the Washington Administrative Code that requires insureds to forward on their own attorneys' internal assessment of an ongoing coverage dispute where the insurance company's legal position does not change in reliance on the opinion.

Defendant's third "failure to communicate" claim under the Washington Administrative Code for Defendant's alleged failure "to promptly respond promptly to Christensen's request for information concerning the split of defense costs" likewise does not establish bad faith as a matter of law. (*See* Pl.'s Mot. for Partial Summ. J. 21-22.) On March 20, 2006, Defendant's claims adjuster Donna Zeller spoke with corporate counsel for Plaintiff Philip Marshall. (May 7, 2007 Decl. of Philip Marshall ¶ 2 (Dkt. No. 142.) In that conversation, "Ms. Zeller indicated that St. Paul wanted to split the defense fees and costs with Christensen." (*Id.* at ¶ 3.) Though she did not quantify the nature of the split, she conveyed Defendant's position that the contract claims were not covered but that the "privacy and right to publicity [claims] likely were." (*Id.* at ¶4.) Although she agreed to provide a written proposal regarding the split within a week, such a proposal was only received one month later on April 21, 2006—three days before a scheduled mediation. (*Id.* at ¶ 5.) In that letter, Defendant proposed a two-thirds/one-third split, with Christensen bearing two-thirds of fees and costs. (*Id.*)

Under these circumstances, a delay of less than one month in providing the requested written proposal of the attorneys' fees arrangement is "reasonably prompt" under the relevant WAC regulation, and thus does not constitute *per se* bad faith. *See Felice v. St. Paul Fire and Marine Ins. Co.*, 711 P.2d 1066, 1071 (Wash. Ct. App. 1985) (questioning a "dilatory" two-month delay in an insurance company's notifying the claimant of a denial of coverage, but noting that "delay alone does not constitute bad faith because it did not constitute an unfounded and frivolous denial of benefits"). Thus, summary judgement in Plaintiff's favor is inappropriate with respect to this claim.

### ii).   WAC 284-30-330(5)

Second, Plaintiff asserts a violation of WAC 284-30-330(5) for "[f]ailing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed." Here,

ORDER – 13

there simply are no proof of loss statements that have been completed. Thus, this allegation is unfounded.

### iii).    WAC 284-30-330(13)

Third, Plaintiff claims a violation of WAC 284-30-330(13) for "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." To the extent this provision even applies to the failure to promptly explain a refusal to settle, the Defendant's justification for refusal to pay the settlement was explicitly laid out mere days after the settlement when Defendant filed a declaratory action in the Southern District of Florida fully outlining the reasons it denied coverage. (Original Compl. (Dkt. No. 1 ) in *Woods v. Christensen Shipyards, Ltd.*, Case No. C06-21133 (S.D. Fla. May 4, 2006).) Therefore, this claim is meritless.

### b.    *Tank*-based Claims

Plaintiff also argues that the same conduct alleged under the specific WAC regulations above violates the general duty of good faith as outlined in *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133 (Wash. 1986). For the same reasons discussed above that the factual allegations regarding Defendant's conduct do not justify summary judgment in favor of Plaintiff on the WAC-based claims, they likewise do not establish a violation of any common law duty under *Tank*. Thus, Plaintiff is not entitled to summary judgment on any of its bad faith claims.

### 3.    The Parties' Cross Motions for Summary Judgment on the Defendant's Alleged Bad Faith Failure to Settle

The parties each move for summary judgment on the issue of whether Defendant's failure to fund the settlement constitutes bad faith. "A denial of coverage based on a reasonable interpretation of the policy is not bad faith, and even if incorrect, does not violate the Consumer Protection Act if the insurer's conduct was reasonable." *Transcontinental Ins. Co. v. Wash. Pub. Util. Districts' Util. Sys.*, 760 P.2d 337, 347 (Wash. 1988) (internal citations omitted). Here, the issue is not whether denial of coverage on a discrete claim was reasonable. The parties and the Court essentially agree that contract-based claims were not covered under the insurance policy, whereas the privacy-based claims were. Rather, the issue here is

ORDER – 14

whether Defendant's apportioning one-hundred percent of the value of the settlement to the contract-based claim was reasonable. As explained above, whether Defendant will ultimately be successful in allocating the entirety of the settlement to non-covered claims is an open question of fact to be resolved at trial. However, it cannot be said that Defendant's resisting payment here was "unreasonable, frivolous, or untenable." *See id.* Accordingly, Defendant is entitled to summary judgment on Plaintiff's bad faith claim for failure to fund the settlement.

### C. Public Disclosure

Defendant moves for summary judgment on Plaintiff's public disclosure claim. Plaintiff asserts that Defendant violated its privacy rights "by publically disclosing private information contained in the mediation settlement." (Compl. 8 (Dkt. No. 1).) However, "[a] corporation, partnership or unincorporated association has no personal right of privacy" and therefore has no cause of action for disclosure. Restatement (Second) of Torts § 652I cmt c. (1977); *accord United States v. Morton Salt Co.*, 338 U.S. 632, 651-52 (1950). Thus, Defendant is entitled to summary judgment on this claim.

### D. Olympic Steamship Fees

Under *Olympic Steamship Co. v. Centennial Ins. Co.*, 811 P.2d 673 (Wash. 1991), an insured can recover attorneys' fees in a successful action to obtain coverage. For the reasons stated above, the question of coverage in this matter is still in dispute. Accordingly, summary judgment cannot be entered on this claim.

//
//
//
//
//
//
//

ORDER – 15

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is hereby DENIED. Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART: Plaintiff's CPA and non-CPA based bad-faith claims for failure to settle are hereby DISMISSED; Plaintiff's Public Disclosure Claim is hereby DISMISSED. All other claims remain in this action.

SO ORDERED this 13th day of July, 2007.

*John C. Coughenour*
John C. Coughenour
United States District Judge

ORDER – 16