The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CHRISTENSEN SHIPYARDS, LTD., a Washington corporation, | NO.  2:06-cv-00641-JCC |
| Plaintiff, | CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE* |
| v. | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a foreign corporation, *et al*. | NOTED FOR HEARING: AUGUST 6, 2007. |
| Defendants. | |

**A.      The Court should grant the undisputed motions.**

        St. Paul does not dispute the motions to exclude Dan Knox, that the Court should require 36 hours of advanced notice of witnesses, that no references to discovery or stipulations before the jury should be made, and that the parties should not use exhibits without prior permission. Accordingly, and for the reasons set forth in the motions, the Court should grant these motions.

**B.      The exclusion of Douglas Baldridge.[1]**

        Christensen does not dispute that St. Paul can cross-examine Mr. Baldridge or call him for purposes of impeachment.  However, the rules are clear that this is all St. Paul should be permitted to do.  FED. R. CIV. P. 26(a)(1)(A), 26(e), 33, 37(c)(1).

---

[1] As St. Paul noted, the motion to exclude Mr. Baldridge's *de bene esse* deposition testimony is now moot and Christensen withdraws the motion based upon the Court's ruling precluding the deposition.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    St. Paul has made no effort to address the harm that Christensen experienced based on its

2    reasonable reliance on St. Paul's objective manifestations of intent to call Mr. Baldridge, if at all,

3    only for impeachment.  St. Paul and its counsel are no novices to litigation.  Holding they need

4    not be bound to the procedural requirements binding Christensen, or holding that St. Paul is not

5    accountable for its strategic decisions, is unjustified and unfair.[2]

6    **C.    Exclusion of evidence of Christensen's and its principles finances.**

7    Irrespective of whether Mr. Luken has $1 or $100 billion, his personal wealth is not

8    relevant to the issues of whether St. Paul breached the insurance contract or acted in bad faith.

9    FED. R. EVID. 401, 402.   The same is true for Christensen's bottom line.  *Id.*   Nor is such

10   information relevant to St. Paul's defenses regarding breach.

11   Further, that Christensen and its principals "have access to extraordinary wealth" does

12   not negate that St. Paul placed Christensen in a position wherein Christensen would either have

13   to face alone a potential $50-60M verdict and pay 2/3 of all of **its** past and future defense costs,

14   or settle for a comparatively nominal amount.  That St. Paul seeks to introduce "access to

15   extraordinary wealth" to show no financial hardship (and presumably no injury) simply proves

16   that St. Paul intends to use this information to improperly mislead or prejudice the jury by

17   wrongly suggesting that those "with access" to wealth are not entitled to the protections afforded

18   by law and the judicial system.  *See FED. R. EVID*. 403.  To illustrate the absurdity of St. Paul's

19   position, one only need imagine St. Paul's opposition to allowing the jury to consider evidence

20   of St. Paul's net worth as disclosed in its latest SEC filing.

21

22

23

[2] St. Paul's argument concerning live testimony versus deposition testimony is nonsensical and irrelevant.  As St. Paul already noted when the parties communicated with the Court as to whether St. Paul should be allowed to depose Mr. Baldridge, Mr. Baldridge presently does not intend to testify live – irrespective of who calls him.

CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS
*IN LIMINE* - 2

2:06-cv-00641-JCC
10650-027856  180343

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

**D.      Settlement negotiations should be excluded.**

St. Paul's allegation that settlement of claims with one party in a coverage action goes to the issue of allocation of defense costs and settlement of another case involving different parties is absurd.  First, it is based upon a conclusion – which has no basis in evidence or fact - that the Navigators settlement amount was determined by an allocation analysis.  Second, as St. Paul concedes, settlements and settlement negotiations cannot be used to establish liability or damages.  Yet, St. Paul attempts to do just that.   Should allocation be required, St. Paul is only <u>liable</u> for those <u>damages</u> allocable to St. Paul.  Third, St. Paul fails to address the obvious ramifications of its argument: the discouragement of settlement.  Should St. Paul be permitted to use settlement against Christensen when there is no evidence whatsoever that Christensen and Navigators determined the settlement amount on the basis of allocation, discourages insureds from settling when there are multiple insurers involved in a coverage dispute.

St. Paul cites no authority for its position, and makes no showing of proof to establish the conditional relevance it seems to argue.  *Consider* FED. R. EVID. 104(b).  Moreover, its position defies common sense and contradicts well-established policy encouraging settlement and settlement negotiations.  The Court should exclude evidence of the Navigators settlement and simply offset a total damage award by that amount if required.

**E.      The Court should exclude the email and St. Paul's claim defense counsel's request that coverage counsel send a letter to St. Paul constitutes comparative bad faith.**

St. Paul does not address Christensen's motion asking the Court to preclude St. Paul from arguing or introducing evidence at trial that Christensen's defense counsel's asking its coverage counsel to send St. Paul a letter concerning coverage constitutes bad faith or a breach of the cooperation clause.  As noted in the motion, such a request does not constitute bad faith, and

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    such arguments are unduly prejudicial and misleading.  FED. R. EVID. 403.  Defense counsel was

2    honoring his ethical duties to his one and only client, Christensen, not St. Paul, when he made

3    that request.   *Tank v. State Farm Fire & Cas. Co.*, 105 Wash.2d 381, 388, 715 P.2d 1133 (1986)

4    (defense counsel retained by insurers to defend insureds under a reservation of rights "represents

5    only the *insured,* not the company.").   Moreover, Christensen filed the motion without obtaining

6    St. Paul's agreement, making the argument misleading and confusing.  FED. R. EVID. 403; *Carr*

7    *Decl., Exs. 1-3 (Dykstra letter, St. Paul's response, proof of filing of summary judgment motion).*

8    Because this aspect of the motion is unopposed and because of the analysis set forth in the

9    motion, the Court should grant it.  As St. Paul should not be allowed to argue that this action

10   constitutes bad faith or a breach of Christensen's duties, the email St. Paul proposes as an exhibit

11   should be excluded for lack of relevance.  FED. R. EVID. 401, 402, 403.

12          Also, St. Paul's claim that email was produced after Mr. Wampold's deposition is not

13   correct.   The document was produced (made available) to St. Paul before Mr. Wampold's

14   deposition; St. Paul simply did not seek to obtain it before the deposition – to wit, although it

15   knew the documents were ready for copying on April 9, 2007 (and had been offered for review

16   on April 6, 2007), St. Paul did not ask or arrange to view or copy the documents until April 17,

17   2007. *Decl. of Heather L. Carr in Supp. of Reply for Mots. <u>In Limine</u>, ¶* 3.

18          St. Paul claims that the email is not privileged because a portion of the email's content

19   was later included in a letter to St. Paul is without merit.  Christensen does not dispute that the

20   letter that resulted from the email is not privileged, but the email between counsel, which was not

21   intentionally produced to St. Paul, is.  St. Paul cites no authority to establish otherwise.

22          Further, Christensen did not waive the attorney client privilege or the work product

23   privilege, and, as such, the email should not be introduced into evidence.   Waiver is the

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*,

2   304 U.S. 458, 464 (1938).  St. Paul has introduced no evidence that Christensen intentionally

3   relinquished or abandoned its known right or privilege.  In fact, the only evidence before the

4   Court establishes the converse.  St. Paul does not dispute  that Christensen's "pedantic" (*i.e.*,

5   conforming to the Federal Rules) privilege log identified the email as privileged on no less than

6   two occasions prior to production.[3]  There is no evidence that the email was produced prior to the

7   April inadvertent production of the Marshall documents.  There is no dispute that Christensen

8   reiterated the concerns for privilege at the Peterson deposition.  There is no dispute that the

9   privileges were asserted during the Wampold deposition.  There is no dispute that Christensen

10  moved to strike the initial declaration attaching the email and objected to the email in subsequent

11  pleadings filed with the Court.  Further, St. Paul does not dispute that Christensen specifically

12  asserted, from the outset of this litigation, the only information and documents Christensen was

13  withholding (of its own volition) from the underlying litigation concerned coverage.  The email

14  concerns coverage.  St. Paul's claim of waiver by implication is patently baseless.

15      St. Paul contends that Christensen should not be allowed to claim inadvertent disclosure

16  simply because Christensen "delayed" bringing the matter to the Court's attention until the

17  fielding of its motion *in limine.*  However, even advising a party of an inadvertent disclosure for

18  the first time even as long as 3 months after the disclosure will not waive the privilege.  *Judson*

19  *Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 476 F.Supp.2d 913, 945 (N.D. Ill. 2007).

20  St. Paul knew Christensen claimed inadvertent disclosure within **days** of Christensen's learning

21  of the disclosure; Christensen should not be punished for conforming to filing deadlines.

22  _____
    [3] St. Paul cites to *Leggett & Platt v. Vutek, Inc.*, 2006 U.S. Dist. LEXIS 53008 (D. Mo. 2006).  However, that case is
23  distinguishable.  There, the party and its counsel did not previously identify the documents as work product, *id. * 5,
    *11,* whereas here Christensen did so with respect to prior productions from which it withheld the document and
    clearly identified it as privileged.

CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS
*IN LIMINE* - 5

2:06-cv-00641-JCC
10650-027856  180343



STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    Lastly, St. Paul's claim that the work product doctrine does not apply because it has

2    substantial need for the email should be rejected.  First, St. Paul submits no evidence to support

3    this claim.  *See generally Dkt.*  Second, as noted, because the document does not tend to prove

4    bad faith or lack of cooperation on Christensen's part, there is no substantial need.

5    **F.    The Court should exclude evidence of defense costs paid after the fact.**

6    St. Paul argues that evidence of payments made by St. Paul – **after** Christensen settled

7    and **after** St. Paul sued Christensen – is relevant to Christensen's claim that St. Paul engaged in a

8    financial squeeze play, which factored into Christensen's decision to settle and which goes to

9    Christensen's still-live claim of bad faith.  Such an argument defies logic.  Obviously St. Paul's

10   change of mind, well-after the damage was done, has and could have no bearing on

11   Christensen's decision to settle several weeks earlier.  St. Paul's argument simply establishes that

12   St. Paul intends to use the information in such a way as to mislead and confuse the jury.  The

13   information is not admissible. FED. R. EVID. 401, 402, 403.

14   Further, Christensen does not agree with St. Paul's characterization that the bad faith

15   claims arising out of the April 19th letter were dismissed.  In its order, the Court addressed

16   Christensen's bad faith claims first.  *Dkt. 211, p. 7-14.*  It denied those bases for summary

17   judgment, leaving them live for trial.  *Id., p. 16 ("For the foregoing reasons, Plaintiff's Motion*

18   *for Summary Judgment is hereby DENIED; Defendant's Motion for Summary Judgment is*

19   *GRANTED IN PART AND DENIED IN PART; Plaintiff's CPA and nonCPA based bad-faith*

20   *claims for failure to settle are hereby DISMISSED; Plaintiff's Public Disclosure Claim is hereby*

21   *DISMISSED. **All other claims remain in this action.**) (emphasis added)*; FED. R. CIV. P. 56.

22   Thus, Christensen's claim that St. Paul acted in bad faith by demanding Christensen pay two-

23   thirds of the defense costs has not been dismissed.

CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS
*IN LIMINE* - 6

2:06-cv-00641-JCC
10650-027856 180343

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   **G.      If there is a basis to allocate, which there is not, St. Paul bears the burden.**

2       The Court has concluded that St. Paul does not dispute Woods' invasion of privacy

3   claims are covered.[4]  *Dkt. 211, p. 6.*  Thus, the Court found it "unnecessary to conduct its own

4   detailed analysis of this contractual language and holds that such privacy-related claims were

5   covered under the policy. *Id., p. 6 n.3.*  As Christensen met its burden of establishing a covered

6   claim, the question, then, turns to allocation.

7       *1.      <u>There is no basis to allocate settlement or defense costs.</u>*

8       Christensen's motion *in limine* seeks an order ruling that there is no basis to allocate.  As

9   noted therein, when covered and non-covered claims consist of the same factual core, allocation

10  of the settlement is not required and the court need not instruct the jury on this issue.   *PUD No.*

11  *1 of Klickitat County v. International Ins. Co.*, 124 Wn.2d 789, 809-810, 881 P.2d 1020 (1994)

12  (citations omitted).  The same is true for defense costs.  *See Nordstrom, Inc. v. Chubb & Sons,*

13  *Inc.,* 820 F. Supp. 530, 536 (W.D. Wash. 1992) (citing *Federal Realty Inv. Trust v. Pacific Ins.*

14  *Co.,* 760 F. Supp. 533, 536-37 (D. Md. 1991)).

15      Here, there is and can be no dispute that the covered (privacy) and non-covered (contract)

16  claims were based upon the same core of facts and/or are reasonably related; thus, there is no

17  basis for allocation here. *In Re Feature Realty Litigation*, 2007 WL 2156605, slip op. *8 and 9

18  (E.D. Wash. July 25, 2007) (refusing to require allocation for settlement and defense costs

19  because the settlement covered several causes of action which arose from the same factual core

20  and caused a single loss and single claim for damages and stating, "As it has not been

21  demonstrated that any element of damage is solely attributable to the non-covered cause of

22  action, there is no reasonable basis for allocation.").  Moreover, even assuming the Court could

23

---

[4] Despite the court's order, St. Paul refuses to unequivocally acknowledge the issue.  *See Decl. of Kenneth Hobbs.*

CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS
*IN LIMINE* - 7

2:06-cv-00641-JCC
10650-027856  180343

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

attempt to allocate the loss amongst covered and non-covered theories, such an endeavor would be arbitrary and would entail pure speculation. *See id.* St. Paul has never demonstrated that any element of damage is solely attributable to the non-covered cause of action and does not attempt to do so now. *See Dkt. 224, pp. 12-18; Dkt. 211, p. 6 and at p. 6 n. 3.* Nor does St. Paul suggest any basis for allocation, much less any basis that does not rely upon pure speculation; nothing in the record or in fact remotely suggests that the underlying plaintiffs and Christensen agreed to the numbers on a per-cause of action basis.. The Court should grant this aspect of the motion, rendering St. Paul's assertion that Christensen bears the burden to prove allocation moot.

### 2. *If there is a basis to allocate, the burden is St. Paul's.*

Assuming there is a basis to allocate, the burden is St. Paul's. As the Court noted,

> The parties and the Court essentially agree that the contract-based claims were not covered under the policy, whereas the privacy-based claims were. Rather, the issue here is whether Defendant's [St. Paul's] apportioning one hundred percent of the settlement to the contract-based claim was reasonable. As explained above, whether **Defendant** will ultimately be successful in allocating the entirety of the settlement to non-covered claims is an open question of fact to be resolved at trial.

*Dkt. 211, pp. 14-15.*

Case law also provides that the burden is St. Paul's. In *Prudential Prop. & Cas. Ins. Co. v. Lawrence*, 45 Wn. App. 111, 724 P.2d 418 (1986), the settlement agreement itself specified only that it involved "all claims" of the parties. *Id.* In ruling that the trial court did not err in ordering Prudential to pay the entire settlement, the court noted, "Even though Prudential contends that it was supplying a defense on the emotional distress claim, it made no effort to apportion the settlement or segregate attorney's fees, even though it had the opportunity to do so. Under these circumstances, we conclude that Prudential was liable for the entire costs of the defense….". *Id.* at 120-121. The court's opinion implies that, under Washington law, the

1   burden of allocation rested on the insurer, not the insured.

2       Similarly, in *Nordstrom, Inc. v. Chubb & Son, Inc.,* 54 F.3d 1424 (9th Cir. 1995), the

3   Ninth Circuit, analyzing Washington law, also implicitly held that, when allocation is

4   appropriate, the allocation burden rests on the insurer: "Under Washington law, allocation is not

5   permitted if an insurer has improperly refused to defend the insured against claims, *see Waite v.*

6   *Aetna Cas. & Sur. Co.,* 77 Wash. 2d 850, 467 P.2d 847, 852 (1970), or has made no attempt to

7   separate out the portion of the settlement amount for which it was liable, *see Prudential Property*

8   *& Casualty Ins. Co. v. Lawrence,* 45 Wash. App. 111, 724 P.2d 418, 424 (1986)."   *Id.* at 1430.

9   Because an insurer who makes no attempt to allocate is denied the right to allocate, it follows

10  that it is the insurer's burden, not the insured's, to present evidence on this issue.

11      That Washington law places the burden on the insurer is also made evident by

12  Washington law concerning offsets.  In *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142

13  Wn.2d 654, 674-765, 15 P.3d 115 (2001), the court held that a non-settling insurer bears the

14  burden to prove the insured has been made whole as a result of prior settlements before any

15  entitlement to an offset may arise.  *Id.* at 673-674.  In doing so, it noted, "Washington's strong

16  public policy of encouraging settlements[,]" and stated, "Were we to hold the **insured** bears the

17  burden of proving it has not received a double recovery, **such a rule would encourage litigation**

18  **and reward the non-settling insurer for refusing to settle**." *Id.*

19      In *Puget Sound Energy v. Certain Underwriters at Lloyds, London*, 134 Wn. App. 228,

20  138 P.3d 1068 (2006), the court stated:

21      … London must "assign a price tag to each of the risks in [Puget's] unquantifiable
        bundle of risks" and prove that the price assigned to the liabilities determined by
22      the jury was enough to cover the verdict of $263,313.79.  Of course, quantifying
        the unquantifiable and allocating what is not yet able to be allocated is an

23

CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS
*IN LIMINE* - 9

2:06-cv-00641-JCC
10650-027856 180343

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

impossible task, **but it is one the Supreme Court has assigned to insurers** such as London as an incentive for them to settle their claims.

*Id.* at 247 (internal citations omitted).

In *Puget Sound Energy, Inc. v. Alba General Ins. Co.*, 149 Wn.2d 135, 68 P.3d 1061 (2003), the Washington Supreme Court stated:

In <u>Weyerhaeuser</u> we did not require the policyholder/insured to break down its costs among released sites or claims, or infer that Weyerhaeuser did anything other than defend against the insurer's motion ... **If the insured were forced to disclose how every dollar was spent, there would be no incentive for any insurance company to settle claims of this magnitude.   That is why the burden is placed squarely on the shoulders of the non-settling insurers; if they wish to avoid paying on a claim, they must show the insured has been made whole.**

*Id.* at 141.

St. Paul wrongly contends that the duty to allocate is Christensen's because Christensen "controlled" the settlement.  First, St. Paul cites no Washington case law to this effect.  In fact, the only Washington case that St. Paul cites for the proposition, *Litho Color, Inc. v. Pacific Employers Ins. Co.*, 98 Wash. App. 286, 991 P.2d 638 (1999), concerned offsets between multiple insurers to avoid the insured receiving a double recovery, not allocation between covered and non-covered claims under a single policy.[5]  *Id.*  That case has since been overruled on that issue, *sub silentio,* by the Washington Supreme Court in *Puget Sound Energy v. Alba*, discussed above.  Washington law directly on point establishes that the insurer, not the insured, must allocate in cases similar to the instant case. *See Prudential Prop.*, 45 Wn. App. at 120-21; *see Nordstrom*, 54 F.3d at 1430.  In any case, as indicated, the facts and issue in *Litho* differ from those here.  Further, there can be no dispute that apportionment between two insurers of damages

---

[5] Here, there is no issue of offset because Christensen has agreed that the entire amount it received from Navigators in settlement should be offset against the amount Christensen may be entitled to recover against St. Paul.

CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS
*IN LIMINE* - 10

2:06-cv-00641-JCC
10650-027856  180343

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

covered under two policies has a basis for allocation.  There is no such basis here.  *See supra at Part G.1.*

Also, the other cases St. Paul cites are inapposite.  None of them involve a situation, such as that here, where there is no basis to allocate – a clear condition precedent to allocation under Washington law.  *See supra at part G.1.*  Moreover, all are distinguishable.

In *Federal Ins. Co. v. Hawaiian Elec. Indus., Inc.,* 1996 U.S. Dist. LEXIS 22804 (D. Ha. 1996), the claims were such as could be allocated; the insureds bore no legal responsibility for the piercing the corporate veil and assessment claims.  *Id.* at *45-54.  Further, there, the insured had a contractual duty to allocate between covered and uncovered amounts.  *Id.* *4.  St. Paul cites to no similar contractual requirement on Christensen's behalf.  Moreover, in *Hawaiian*, the issue arose in the context of the large settlement rule. *Id.,* 1996 U.S. Dist. LEXIS 22804  * 61.  The court noted that the majority of the courts **applying the larger settlement rule** impose the allocation burden on the insured.  *Id.*  Although the Hawaii state courts had not addressed the issue, the Court simply concluded, without analysis to Hawaiian analogous law, that the state courts would choose to place the allocation burden on the insured.  *Id.*

*Voest Alpine Indus. v. Zurich Am. Ins. Co.,* 2007 U.S. Dist. LEXIS 29374 (D. Pa. 2007), also does not address the issue of whether there is a basis for allocation; it does not substantively identify the covered and non-covered claims at all. *Id.*  Moreover, the *Voest* case actually asserts that allocation is a matter for the court.  *Id.* at *3 ("When an insured settles liability that is based on covered and non-covered claims without a contemporaneous apportionment between the two, then the proper procedures is for the court to make an equitable apportionment of the settlement … the ultimate allocation is a matter that rests with a sound exercise of the court's equitable discretion.").  Further, it applies Pennsylvania law, not Washington law. *Id.*

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1    Similarly, *Caterpillar, Inc. v. Great American Ins. Co.*, 62 F.3d 955 (7th Cir. 1995),

2  applying Illinois law, does not address the primary inquiry under Washington law of whether

3  there is a basis to allocate.  *Id.*  In *Caterpiller*, the district court held that the insurer was entitled

4  to an allocation, **but only the extent that the settlement was larger due to the activities of the**

5  **uninsured**.  *Id.* at 959.  It noted that the **insurer** could try "to prove that all or part of those

6  activities attributed to [the insured] were performed by uninsured persons…."  *Id.*   On cross

7  appeals, the insurer claimed the allocation should reflect Caterpiller's direct corporate liability;

8  the insured claimed no allocation for the acts of unnamed persons should be allowed.  *Id.*   The

9  issue of who bore the burden of allocation was never addressed.  Rather, the Seventh Circuit

10  specifically noted, "We also believe that a protracted pursuit of the motivations underlying a

11  settlement … is not necessary the best way to resolve coverage disputes." *Id. at 962 (citing*

12  Nordstrom, 54 F.3d at 1433 n. 2.).  It went on to state, "Thus, as the district court noted, Great

13  American [**the insurer**] is entitled to attempt some measure of allocation with regard to the

14  settlement of the *Kas* litigation." *Id.*   *Caterpiller* supports Christensen's contention that the

15  allocation burden rests on the insurer, not St. Paul's contention to the contrary.

16    Lastly, *Perdue Farms, Inc. v. Travelers Cas. and Surety Co.,* 448 F.3d 252 (4th Cir. 2006)

17  likewise does not address whether a basis for allocation exists and is also distinguishable. Rather,

18  there, the claims were specifically pled, making allocation possible.  *Id.* at 255, 261-62.   If there

19  is a basis to allocate, the Court should hold that the burden is on St. Paul to do so.

20    DATED this 6th day of August, 2007.
      STAFFORD FREY COOPER

22    By:  ___/s/ Heather L. Carr via ECF_____
           A. Richard Dykstra, WSBA #5114
           Kenneth Hobbs, WSBA #15309
           Heather L. Carr, WSBA #29780
      Attorneys for Plaintiff Christensen Shipyards, Ltd.

CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS
*IN LIMINE* - 12

2:06-cv-00641-JCC
10650-027856 180343

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1

Certificate of Service

2

I certify that on the date noted below I electronically filed this document entitled CHRISTENSEN'S REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

3

4

5
James W. Carbin
JWCarbin@duanemorris.com
Duane Morris, LLP
744 Broad Street, Suite 1200
Newark, NJ 07102-3889
(973) 424-2035
FAX: (973) 424-2001
        *Attorneys for Defendant St. Paul Fire and Marine Insurance Co.*

6

7

8

Charles C. Huber
huberC@lanepowell.com
Lane Powell, PC
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338
(206) 223-7265
FAX: (206) 223-7107
        *Attorneys for Defendant St. Paul Fire and Marine Ins. Co.*

9

10

11

Daniel F. Knox, 78278
dknox@schwabe.com
Schwabe, Williamson & Wyatt
1211 SW Fifth, Suite 1900
Portland, OR 97204-3795
(503) 222-9981
FAX: (503) 796-2900
        *Attorneys for Defendant Navigators Insurance Company*

12

Douglas Baldridge
jdbaldridge@venable.com
Venable, LLP
575 Seventh Street NW
Washington DC 20004-1601
(202) 344-4703
FAX: (202) 344-8300
        *Attorneys for ETW, Inc. and Privacy, Ltd.*

13

14
and I certify that I have caused to be served in the manner noted below a copy of the above-listed document to the following non CM/ECF participants:

15

16
[ ]   Via Facsimile
[ ]   Via First Class Mail
[ ]   Via Messenger

17

18
        DATED this ___ day of _____, 2007, at Seattle, Washington.

19

20
                        /s/ Heather L. Carr via ECF

21

22

23

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885