HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTENSEN SHIPYARDS, LTD., a Washington Corporation,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a foreign corporation, and NAVIGATORS INSURANCE COMPANY, a foreign corporation,<br><br>　　　　　　　　　　Defendants. | No. 06-CV-00641<br><br>**ST. PAUL'S TRIAL BRIEF**<br><br>TRIAL DATE: AUGUST 13, 2007 |

## I. INTRODUCTION

St. Paul Fire and Marine Insurance Company ("St. Paul") respectfully submits its trial brief and incorporates the facts in St. Paul's Motion for Summary Judgment and the Court's Summary Judgment Order of July 13, 2007 ("Summary Judgment Order").

The Court in its Summary Judgment Order and in its Order of June 25, 2007 significantly narrowed the core issues that need to be decided at trial.[1]  First, in the Order of

---

[1] Prior to the ruling to the Summary Judgment Order, Christensen settled its claims for coverage and *Olympic Steamship* fees against its excess insurer, Navigators Insurance Company, for $100,000. Christensen has agreed that the settlement should be used as an offset against any recovery it receives from St. Paul.

ST. PAUL'S TRIAL BRIEF - 1
Case No. 06-CV-00641

119178.0006/1412405.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

June 25, 2007 the Court denied Christensen's motion which sought a separate hearing on the reasonableness of the settlement in the Underlying Litigation. Second, St. Paul believes that this Court's Summary Judgment Order effectively eliminated any "bad faith" or Consumer Protection Act "CPA" claims from this case, leaving only Christensen's breach of contract claim for trial. This claim involves the following specific issues:

(1)   Whether there was any coverage for Christensen's settlement with Woods;

(2)   Whether Christensen breached the Cooperation Clause – either during the course of the underlying litigation or by settling that suit without St. Paul's consent; and

(3)   If Christensen is entitled to recover any portion of its settlement payment, the allocation of that payment between covered and uncovered claims.

## II. STATUS OF THE LITIGATION

Christensen's Complaint alleged four causes of action against St. Paul:

1.   "Bad faith;"

2.   Public Disclosure of Private Facts;

3.   Breach of Contract; and

4.   Violation of the Consumer Protection Act ("CPA").

*See* Complaint.

Christensen's "bad faith" count was premised upon *Tank v. State Farm*, 105 Wn.2d 381, 715 P.2d 1133 (1986). Summary Judgment Order ("Dkt 211") at 6:11. The CPA count alleged general violations of RCW 19.86.

After the close of discovery, on May 10, 2007 the parties both cross-moved for summary judgment. St. Paul specifically moved to dismiss all of Christensen's bad faith and CPA claims. St. Paul put all of Christensen's claims at issue before the Court and made it incumbent upon Christensen to demonstrate that an issue of fact existed with respect to each

ST. PAUL'S TRIAL BRIEF - 2
Case No. 06-CV-00641

119178.0006/1412405.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

of its claims. This Court's Summary Judgment Order specifically recognized "Defendant St. Paul moved for summary judgment on all claims." Dkt 211 at 1:22.

Christensen cross-moved for partial summary judgment, seeking a judgment based on estoppel, breach of duties and bad faith. At the same time, Christensen filed a motion seeking a separate hearing on the issue of reasonableness of the Woods settlement. In that motion, Christensen requested that the Court set a date for a hearing to determine whether the settlement was reasonable as an issue for the Court and not the jury.

On June 25, 2007, the Court held that the question of whether the underlying settlement was reasonable would not be subject to a separate reasonableness hearing. In tat order, this Court noted that juries around the country are able to resolve complicated questions including the merits of an underlying settlement and, to the extent that there is a concern that confidential information would be released to the public, the Plaintiff should not have requested a jury trial in the first place.

The Court's Summary Judgment Order effectively eliminated any bad faith and CPA claims. In addressing the bad faith claims, this Court noted that that there were several CPA claims alleged and that St. Paul had moved for summary judgment on each of them.[2] Significantly, no aspect of St. Paul's summary judgment motion with respect to Christensen's bad faith or CPA claims was denied.

The Court initially addressed Christensen's claim that St. Paul was estopped from denying coverage because its reservation of rights letter was inadequate. The Court held:

> **Thus, Defendant properly issued a reservation of rights and <u>it is not now estopped from denying coverage</u> as a result of any alleged deficiencies in its reservation.**

Dkt 211 at 10:22-23 (emphasis added).

---

[2] Dkt 211 at 9:12-14.

ST. PAUL'S TRIAL BRIEF - 3
Case No. 06-CV-00641

119178.0006/1412405.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

The Court next addressed Christensen's bad faith claims for "Failure to Properly Communicate Before And After Settlement" – both under the CPA and *Tank*. The Court properly recognized that Christensen's CPA claims were premised upon alleged violations of the Washington Administrative Code. St. Paul's summary judgment submissions and this Court's summary judgment Order addressed <u>each</u> of the specific WAC regulations which Christensen contended St. Paul had violated. This Court rejected <u>each</u> of Christensen's WAC/CPA claims.

Christensen's first WAC claim was premised upon WAC 284-30-330(2) – involving the alleged failure to act reasonably promptly in response to communications. The Court then went through each of the three ways St. Paul had allegedly breached this regulation. The Court characterized Christensen's claim for "failure to update Plaintiff as to the Woodses amended" complaints as "meritless." Dkt 211 at 12:2. It then held "Plaintiff likewise fails to demonstrate any breach of the WAC regulations with regard to Plaintiff's second 'failure to communicate claim,' involving St. Paul not giving Christensen its coverage opinion – since this is not required by any WAC regulation. Finally, the Court held that Donna Zeller's alleged delay of less than one month in providing Christensen a letter was "reasonably prompt" under the relevant WAC regulations. Dkt 211 at 13:16-17.

The second WAC regulation raised by Christensen, 284-30-330(5), involves proof of loss statements. This Court easily recognized this WAC was not involved in this case and described the allegation as "unfounded." Dkt 211 at 14:1.

The last WAC regulation raised by Christensen is WAC 284-30-330(13). The Court questioned whether this applied to require an explanation for an insurer's refusal to settle. The Court then recognized that even if it was applicable, St. Paul had properly outlined its position within days of Christensen's settlement. As such, it described Christensen's claim as "meritless." Dkt 211 at 10.

ST. PAUL'S TRIAL BRIEF - 4
Case No. 06-CV-00641

119178.0006/1412405.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

The Court next addressed Christensen's "failure to communicate" claims under *Tank*. The Court held that these same facts "do not establish a violation of <u>any</u> common law duty under *Tank*." Dkt 211 at 14:16 (emphasis added). Christensen's inability to establish a violation of any duty in the summary judgment context requires dismissal of its claim.

The Court then addressed Christensen's bad faith "failure to settle" claims. The Court specifically granted St. Paul's motion for summary judgment on this issue. The Court held "it cannot be said that Defendant's resisting payment here was 'unreasonable, frivolous, or untenable.'" Dkt 211 at 15:4-5.

Lastly, the Court's order also specifically dismissed Christensen's claim for "public disclosure" arising out of St. Paul's reference to the settlement in the *Woods* case. As a corporation, Christensen has no privacy rights. Dkt 211 at 15:13.

Following the summary judgment order, Christensen maintained that there was some type of bad faith or CPA claim left in the case. However, this is not the case. St. Paul moved to dismiss every "bad faith" and CPA claim alleged in the complaint. The Court's Summary Judgment Order was comprehensive and addressed every bad faith and CPA claim at issue in the case. Significantly, the Court dismissed the common law and CPA claims. Christensen should not be allowed to allege new or different bad faith and/or CPA claims after summary judgment was entered.

Following receipt of the Court's Summary Judgment Order St. Paul asked Christensen to clarify the nature of the "bad faith" claims it contended had survived summary judgment. Attached is a July 18, 2007 letter from Christensen's attorney, Mr. Kenneth Hobbs, in which he referred to paragraph 23 of Christensen's complaint as identifying Christensen's remaining claims. *See* attached pages 6-7 of Christensen's complaint (containing paragraph 23). Significantly, Mr. Hobbs made no reference to any CPA violations in his letter.

St. Paul believes this Court's Summary Judgment Order eliminated the bad faith claims alleged in paragraph 23 of the complaint. Certainly, this Court already dismissed

ST. PAUL'S TRIAL BRIEF - 5
Case No. 06-CV-00641

119178.0006/1412405.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Christensen's "failure to communicate claims" – such as alleged in sub-paragraph "d." It also dismissed the claim alleged in paragraph "e" – based on the public disclosure of the settlement. However, as above, St. Paul's motion for summary judgment placed all of Christensen's claims at issue and it did not demonstrate material facts existed with respect to any of the claims alleged in paragraph 23 of Christensen's complaint. If any bad faith claims remain in the case, Christensen should be limited to those claims identified in paragraph 23 of its complaint which the Court has not already expressly dismissed.

Finally, the Court's summary judgment Order also specifically recognized that the only basis on which Christensen would have had to pay Woods' attorneys' fees in the Underlying Litigation was for breach of contract. The Court's Order provided:

> As an initial matter, the Court notes that attorneys' fees will not be available for the privacy claims contrary to Plaintiff's contention . . . Accordingly, attorneys' fees were only available for the contract related claims; they were not available for the privacy torts.

Thus, because Christensen paid the Underlying Settlement to recompense Woods for his attorneys' fees, this was a breach of contract settlement.

### III. CHRISTENSEN BREACHED THE COOPERATION CLAUSE

In presenting evidence and argument at trial with respect to Christensen's breach of the Policy's Cooperation Clause, St. Paul will show that Christensen is not entitled to coverage because:

- Christensen failed to advise St. Paul of important developments in the Underlying Litigation;
- Christensen failed to advise St. Paul of settlement opportunities in the Underlying Litigation;
- Christensen refused to settle the matter in return for an apology to Woods;
- Christensen hid from St. Paul that its defense counsel was working in tandem with Christensen's coverage counsel in contravention of St. Paul's coverage defenses;

ST. PAUL'S TRIAL BRIEF - 6
Case No. 06-CV-00641

119178.0006/1412405.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

- Christensen threatened St. Paul that it would not file a bona fide motion for summary judgment unless Christensen waived its coverage defenses;
- Christensen excluded St. Paul from the mediation and then settled the underlying matter without the knowledge or consent of St. Paul; and
- Christensen usurped control of the litigation to hide its contractual breaches of the Yacht Contract and to facilitate its goal of obtaining coverage for non – covered claims.

St. Paul will show that Christensen purposefully kept important information about the Underlying Litigation away from St. Paul to try and enhance Christensen's coverage position against St. Paul.

St. Paul will also show that it was prejudiced by Christensen's failure to cooperate as it was prevented from resolving the litigation at an early stage and that if St. Paul had been made aware of the opportunities to settle, it would acted upon the opportunities and settled the matter. It is clear if Christensen had been willing to apologize—to which its founder was adamantly opposed—the Underlying Litigation it could have resolved much sooner and much more economically. Because Christensen did not advise St. Paul of the settlement talks, St. Paul was compelled to spend hundreds of thousands of dollars in additional defense costs, which lead to the near exhaustion of the Policy's defense limits.

St. Paul will show that if it had been presented with the opportunity to settle the matter for Woods' attorney's fees when it was first presented to Christensen, the approximate settlement would have been $300,000. Had this occurred, St Paul would not have incurred more than $500,000 in defense costs.

It is clear that Washington law recognizes that an insurer may decline coverage even if it is otherwise available under the policy, when it is prejudiced by the insured's breach of a cooperation clause. *Tran v. State Farm Fire and Cas. Co.*, 136 Wn.2d 214, 961 P.2d 358 (1998); *Pilgrim v. State Farm Fire and Cas. Co.*, 89 Wn. App. 712 950 P.2d 479 (1997); *Hermon v. Safeco Ins. Co.*, 104 Wn. App. 783, 17 P.3d 631 (2001); *Northwest Prosthetic & Orthotic v. Centennial Ins. Co.*, 997 P.2d 972, 976 (2000). Here, Christensen failed to cooperate and to obtain the insurer's consent to settle, both of which are conditions precedent to coverage under the Policy. Hence, coverage should not be afforded for the Woods claim.

ST. PAUL'S TRIAL BRIEF - 7
Case No. 06-CV-00641

119178.0006/1412405.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

## IV. ST. PAUL SHOULD NOT BE COMPELLED TO INDEMNIFY CHRISTENSEN FOR NON-COVERED CLAIMS

Since this is an insurance coverage case, Christensen as the insured has the burden of showing a covered loss under the Policy. *Overton v. Consolidated. Ins. Co.*, 145 Wn.2d 417, 38 P.3d 322 (2002). Here, the Court has already ruled that those claims for the recovery of Mr. Woods' contract-based claims are not covered, including recovery of the Woods' attorney fees.

> Attorneys' fees were only available for the contract-related claims – not for the privacy claims.

Dkt 211 at 7:1-2.

Thus, Christensen has the burden of showing that there is a covered loss under the St. Paul policy, which cannot include Woods' attorneys' fees. If it can sustain that burden, an allocation between covered and non –covered claims must be undertaken. *See, e.g., State Farm v. English Cove Assocs.*, 121 Wn. App. 358, 88 P.3d 986 (2004). If it cannot, this case must be dismissed in St. Paul's favor.

Christensen will likely argue that the burden of allocating the costs of the $1.6M settlement should be borne by St. Paul.[3] Christensen' s arguments, however, are misplaced. Christensen does not take into account (as it must) that it was controlling the defense and was interacting with the Woods' attorneys and hence *by design*, it was the party in control of the information pertaining to allocation.

Christensen was effectively in control of the defense of the Underlying Case through counsel of its own choice. Christensen improperly exercised its control by threatening St. Paul that it would not file a bona fide motion for summary judgment unless St. Paul waived

---

[3] Christensen filed a motion in limine regarding the burden on allocation.

ST. PAUL'S TRIAL BRIEF - 8
Case No. 06-CV-00641

119178.0006/1412405.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

its coverage defenses. Christensen also never informed St. Paul that Christensen admitted it breached the Yacht Contract.

Christensen was also in control of settlement process. During this time, Christensen went concealed pertinent information from St. Paul. It excluded St. Paul from the mediation. It settled the matter with Woods without St. Paul's consent. It set up a contrived 48 hour window after the mediation in which it tried to improperly pressure St. Paul to pay a settlement which exceeded St. Paul's policy limits. In addition, Christensen presented no rationale for its unilateral decision to change is pre-mediation position that the case would be settled for a nominal sum or tried – which is particularly unusual since no new information was brought to light at the mediation regarding liability or damages. Since Christensen controlled the settlement process, it should bear the burden of proof on allocation.

## V. CHRISTENSEN WILL NOT BE ABLE TO SHOW THAT THE SETTLEMENT WAS REASONABLE

Under Washington law where an insured settles a claim without the participation of its insurer the burden rests with the insured to show that the settlement was reasonable. *Chaussee v. Maryland Cas. Co.*, 60 Wn. App. 504, 803 P. 2d 1339 (1991).

In this instance, Christensen will have a difficult task of showing that the settlement was reasonable, especially in light of the fact that the evidence available to the parties shows that Woods had no damages. Specifically, Christensen's defense counsel, Michael Wampold, testified that Woods did not have any provable damages. Further, several days prior to the mediation, he furnished St. Paul and Christensen with a status report stating that Woods had never identified a damages expert and did not disclose any expert opinions regarding damages. Moreover, Wampold stated that Woods would not be able to show a loss in endorsement value or that he was entitled to any royalties as there was no evidence that Christensen profited from using Woods' name.

ST. PAUL'S TRIAL BRIEF - 9
Case No. 06-CV-00641

119178.0006/1412405.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Even after the mediation, and after the settlement was reached, counsel for Christensen, Jan Peterson, one of Michael Wampold's partners, wrote an email to Woods attorney Mr. Baldridge, acknowledging that there was insufficient evidence of Woods' damages and "the insurer has a need to justify paying any settlement."

The lack of damages available to Woods perhaps explains why Christensen moved for a separate hearing on reasonableness before the Court held that his attorneys' fees were not recoverable by Christensen. If the Court would have ruled that the settlement was reasonable, the issue of including Woods' attorney's fees in the settlement may never have arisen in that context and Christensen would have been able to tell the jury the amount of the settlement has already received the imprimatur of the Court. Now, given the Court's ruling that attorneys' fees are not covered, Christensen is left to explain to the jury that the settlement was "reasonable" solely the based on Woods' non-covered attorneys' fees.

## VI. **RECOVERY OF ATTORNEYS FEES**

To the extent the Court has to resolve the question of recovery of attorneys' fees at this stage, under Washington law attorneys' fees are not available to every successful litigant in a coverage matter. For example an insured is not entitled to entitled to recover its fees for "time spent on unsuccessful claims". In *St. Paul Fire & Marine Ins. Co. v. Hebert Constr., Inc.*, 2007 U.S. Dist. LEXIS 11616, 9-10 (W.D. Wash. 2007) the Court stated:

> An insured is entitled to attorneys' fees where the insured litigates an issue of coverage, but not if the issue is merely a dispute about the value of a claim. *Leingang*, 131 Wn.2d at 146. In determining an appropriate award, the Court must segregate time spent on successful claims from hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time. *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1985).

Since most of Christensen's claims have been dismissed, it is clear that a large portion of its fees are not recoverable. Similarly because Christensen exhausted resources in

ST. PAUL'S TRIAL BRIEF - 10
Case No. 06-CV-00641

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

119178.0006/1412405.1

prosecuting the claims against Navigators and then settled all of its claims including the *Olympic Steamship* fees, those fees are also not recoverable.

Assuming *arguendo* that Plaintiff is awarded damages based on the fact that St. Paul is unable to show prejudice resulting from the breach of the Cooperation Clause and Consent to Settle Clause, Washington law provides that the insured's attorney's fees are not recoverable. *See, e.g., Public Util. Dist. No. 1 v. International Ins. Co.*, 124 Wn.2d 789, 814-15, 881 P.2d 1020 (1994) where the Washington Supreme Court held:

> We cannot authorize the imposition of attorney fees, however, when an insured has undisputedly failed to comply with express coverage terms, and the noncompliance may extinguish the insurer's liability under the policy. By settling the MDL 551 claims without the consent of their insurers, the insureds in this case took actions inconsistent with the express coverage terms of their policies. Although we have found they are nonetheless entitled to the insurance proceeds because the insurers were not actually prejudiced by their noncompliance, we cannot justify an attorney fees award under these circumstances.
>
> We, therefore, reverse the trial court's attorney fee award and, likewise, reject the Plaintiffs' request for attorney fees and costs on appeal.

*Id.*

In addition, *Olympic Steamship* fees are only available for breach of the insurance contract, and are not available in every case of insurance bad faith.

DATED: August 10, 2007.

DUANE MORRIS, LLP

By _____
James W. Carbin, Esq.
Admitted *pro hac vice*
Attorneys for St. Paul Fire and Marine
Insurance Company

ST. PAUL'S TRIAL BRIEF - 11
Case No. 06-CV-00641

119178.0006/1412405.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

LANE POWELL PC

By _____
Charles C. Huber, WSBA No. 18941
Attorneys for St. Paul Fire and Marine
Insurance Company

ST. PAUL'S TRIAL BRIEF - 12
Case No. 06-CV-00641

119178.0006/1412405.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
**CERTIFICATE OF SERVICE**

I, Julia Crippen, hereby make the following Declaration from personal knowledge:

On the 10th day of August, 2007, I presented the attached document to the Clerk of the Court for filing and uploading to the CM/EFC system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following attorneys:

A. Richard Dykstra (rdykstra@staffordfrey.com)
Kenneth Hobbs (khobbs@staffordfrey.com)
Heather L. Carr (hcarr@staffordfrey.com)
Danford Duncan Grant (dgrant@sstaffordfrey.com)
Stafford Frey Cooper
601 Union Street, Suite 3100
Seattle, WA 98101

Daniel F. Knox (dknox@schwabe.com)
Noah Jarrett (njarrett@schwabe.com)
Schwabe, Williamson & Wyatt
1211 SW 5th Ave, Suite 1900
Portland, OR 97204

James W. Carbin (jwcarbin@duanemorris.com)
Duane Morris LLP
The National Building
744 Broad Street
Newark, New Jersey 07102

J. Douglas Baldridge (jdbaldridge@venable.com)
Danielle R. Foley (drfoley@venable.com)
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601

I HEREBY DECLARE UNDER PENALTY OF PERJURY under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

EXECUTED this 10th day of August, 2007, at Seattle, Washington.

_/ s/ Julia Crippen_
Julia Crippen

ST. PAUL'S TRIAL BRIEF - 13
Case No. 06-CV-00641

119178.0006/1412405.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

# STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100 Seattle, WA 98101-1374 TEL (206) 623-9900 FAX (206) 624-6885

RECEIVED
JUL 19 2007
LANE POWELL PC

July 18, 2007

Charles C. Huber
Lane Powell, PC
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338

    Re:    Christensen Shipyards v. St. Paul Fire & Marine Ins. Co., et al.
           Our File No.: 10650-027856

Dear Charles:

    Thank you for your July 16th letter enclosing a notice of deposition and subpoena for the deposition of Richard Kilpatrick. Enclosed is a deposition notice and subpoena confirming similar arrangements for your expert Edward McKinnon.

    With respect to St. Paul's position that Judge Coughenour's summary judgment ruling eliminates any and all bad faith claims from the case, I refer you to plaintiff's complaint, which provides the factual allegations in support of plaintiff's claims, and which at paragraph 23 alleges at least five separate theories upon which the jury could find bad faith, only one of which is addressed in the Court's order. The last sentence of the Court's order provides "plaintiff's CPA and non-CPA based bad faith claims for failure to settle are hereby dismissed; plaintiff's public disclosure claim is hereby dismissed. All other claims remain in this action."

                                  Sincerely,

                                  Kenneth Hobbs

KFH/mlm
Encls.
cc:    James W. Carbin (w/encl.)

1  settlement called for in the Underlying Suit. Its' pleading apparently alleged the identity
2  of the plaintiff in the Underlying Lawsuit, and alleged the amount of the Underlying
3  Settlement, all in violation of Christensen's obligations under the Mediation Settlement.
4  On information and belief St. Paul also issued a Press Release, describing its lawsuit,
5  including the identity of the plaintiff in the Underlying Lawsuit, and the amount called for
6  in the Mediation Settlement, which was to remain confidential.

### FIRST CAUSE OF ACTION
### ST. PAUL'S BAD FAITH

21.   Plaintiff re-alleges paragraphs 1 – 20 above.

22.   St. Paul owes Christensen an "enhanced duty of good faith and fair dealing" under the laws of the State of Washington, as established by its statutes and common law, including *Tank v. State Farm Fire & Cas. Co.* 105 Wn.2d 381, (1986). Included within the enhanced duty of good faith is the duty to keep Christensen fully informed not only of the reservation of rights defends itself, but *all* developments relevant to the policy coverage, also to refrain from engaging in any action which would demonstrate a greater concern for St. Paul's monetary interest than for Christensen's financial risk.

23.   St. Paul breached its enhanced duty of good faith, and acted in bad faith in at least the following respects:

   a.   Failing to conduct a prompt, full, fair and reasonable investigation before announcing its coverage decisions, in violation of its duties under its contract, Washington statutes, and Washington common law, as in *Coventry Associates v. American States Ins*, 136 Wn.2d 269, 279 (1998);

COMPLAINT FOR DAMAGES FOR BAD FAITH AND
BREACH OF CONTRACT - 6
10650-027856  90220

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

15

1  b. Using confidential attorney client communications and work product information obtained from Christensen's defense counsel under its right to control the defense to build a case for denial of coverage and reduce its obligations under its policy, in violation of Washington common law as established in *Ellwein v. Hartford Accident and Ind. Co., 142 Wn.2d 766, 781-82 (2001)*

c. Failing to send an adjuster with adequate authority to attend the mediation, thereby exposing Christensen to the risks of violation of local court rule, and the risks of having to proceed with trial when the case could have settled.

d. Failing to keep Christensen fully informed of all developments relevant to its policy coverage, including delaying sending a letter discussing its position that it would not pay for the already incurred defense costs, until the morning of the mediation, even though trial was scheduled to begin in only a few weeks.

e. With knowledge that the plaintiff in the Underlying Lawsuit was intent on protecting his privacy and avoiding publicity, and that the amount of the payment under the Mediation Settlement was confidential, and not to be disclosed, St. Paul nevertheless filed suit, and otherwise disclosed to the public this confidential information, thereby jeopardizing Christensen's financial interests for its own financial gain.

24. St. Paul's various breaches of its enhanced duty of good faith and fair dealing caused Christensen harm, which is presumed, or as will be proven at trial.

25. St. Paul's breach of its enhanced duty of good faith estoppes St. Paul from denying coverage for all sums that Christensen is obligated to pay to settle the Underlying Lawsuit, including even sums for which the policy may not provide coverage,

COMPLAINT FOR DAMAGES FOR BAD FAITH AND
BREACH OF CONTRACT - 7
10650-027856 90220

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885