The Honorable John C. Coughenour

**06-CV-00641-CVSHT**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CHRISTENSEN SHIPYARDS, LTD., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a foreign corporation; and NAVIGATORS INSURANCE COMPANY, a foreign corporation,<br><br>Defendants. | NO. 2:06-cv-00641-JCC<br><br>CHRISTENSEN'S FIRST OFFER OF PROOF |

Christensen submits the following offer of proof regarding evidentiary issues that have been raised and which are anticipated during presentation of Christensen's case.

**A.   St. Paul's delay in responding to insured's request regarding fee split.**

During examination of Donna Zeller, the court sustained objections to this line of questioning as having already been addressed by the court's summary judgment ruling. *See attached excerpt from trial transcript.* The court's July 13, 2007 order (*Dkt. No. 211*) does state:

> Under these circumstances, a delay of less than one month in providing the requested written proposal of the attorneys' fees arrangement is "reasonably prompt" under the relevant WAC regulation, and thus dose not constitute *per se* bad faith.

CHRISTENSEN'S FIRST OFFER OF PROOF - 1
2:06-cv-00641-JCC
10650-027856 182897

ORIGINAL

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900   FAX 206.624.6885

1  *Dkt. No. 211 at p. 13.* However, the context of the court's decision on this issue was in
2  addressing **plaintiff's** motion for summary judgment seeking to establish that the
3  evidence (which is undisputed as to what occurred) violated WAC 284-30-330(2) **as a**
4  **matter of law.** Thus, in denying plaintiff's motion, the limit of the court's ruling is to
5  determine that the evidence presents an issue **for the jury** regarding compliance with
6  the Regulation. The court has already clarified that while the court itself expresses
7  doubt regarding the sufficiency of plaintiff's evidence, the summary judgment order does
8  not **dismiss** claims other than those specifically addressed as dismissed during the
9  court's discussion of defendant's summary judgment motion. It is therefore proper for
10 the jury to consider the evidence. Moreover, even if the court intended to eliminate the
11 issue as to applicability of the regulation for purpose of establishing a *per se* violation,
12 the evidence is also relevant on the issue of an insurer's general duty of good faith,
13 which "requires an insurer to deal fairly with its insured, and to give equal consideration
14 to its insured's interest and its own interests." *Tank v. State Farm Fire & Cas. Co.*, 136
15 Wn.2d 214, 961 P.2d 358, 385-86 (1998); WPI 320.02. In a reservation of rights
16 context, an insurer also has a duty to fully inform the insured of all developments
17 affecting coverage, *Industrial Indem. Co. of the NW v. Kallevig*, 114 Wn.2d 907, 916-
18 917, 792 P.2d 520 (1990), WPI 320.03; and the explanation for the delay that "I was
19 busy" goes to the issue of whether the delay was unreasonable, unfounded, or frivolous.
20 WPI 320.01.

21 **B.   Adequacy of reservation of rights letter.**

22   Again, in its summary judgment order the court ruled that the letter was adequate
23 to place Christensen on notice regarding St. Paul's position that Woods' breach of

CHRISTENSEN'S FIRST OFFER OF PROOF - 2
2:06-cv-00641-JCC
10850-027858 182897

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  contract claims were excluded under the policy. However, the context of the ruling was
2  again *denying Christensen's motion, not granting St. Paul's*. Moreover,
3  Christensen has never argued that the letter was inadequate as to the breach of
4  contract exclusion. However, the jury should be entitled to consider whether other
5  aspects of the reservation of rights letter are inadequate and therefore estop St. Paul
6  from raising coverage issues it later asserted, which it knew or should have known but
7  failed to address at the time of its initial letter.

8  The first issue is the adequacy of the letter regarding St. Paul's position on other
9  potential policy exclusions, referred to in the letter as "intentionally undertaken for
10  commercial purposes" and "violation of Florida law." Although Ms. Zeller begrudgingly
11  *conceded during her testimony that the policy language to which she was referring did
12  not apply to the "intentional act" issue, and that the only Florida statute referred to in
13  Woods' complaint did not meet the definition of a "penal statute" within the meaning of
14  the policy,* those issues were never made clear to Christensen during the Underlying
15  Litigation. Then when St. Paul finally proposed to split fees 2/3 Christensen and 1/3 St.
16  Paul on April 19, 2006 (Ex. 50), she did not refer to the breach of contract claim, but
17  instead stated "a majority of the counts listed [in the second amended complaint] would
18  not be covered under the subject policy.

19  The second issue is the effect of what is not in the reservation of rights letter but
20  should be, and what developments arose for which St. Paul should have issued a new
21  or revised reservation of rights. For example, whether a second year of policy coverage
22  was triggered by the second amended complaint, and whether St. Paul may now rely on
23  an exclusion that the injury alleged arose out of a "first publication before the beginning

CHRISTENSEN'S FIRST OFFER OF PROOF - 3
2:06-cv-00641-JCC
10650-027858  162897

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1  of the policy period." Although Christensen believes the issue of whether there is in fact
2  coverage for one or two policy years, the issue of estoppel to deny coverage is for the
3  jury.

4  **C.   Scope of Kilpatrick expert testimony.**

5  St. Paul is expected to argue that Christensen's expert Richard Kilpatrick should
6  not be entitled to testify regarding issues of Christensen's conduct under the policy's
7  cooperation clause, because his expert disclosure does not identify those issues.[1] The
8  exchange of expert disclosures was simultaneous in this case and occurred on May 21,
9  2007. Until then, Mr. Kilpatrick had no way of knowing what specific conduct of
10 Christensen St. Paul criticized. St. Paul has now had an opportunity to depose Mr.
11 Kilpatrick and discover the basis for all his opinions. In light of the leeway the court has
12 extended St. Paul by being allowed to call witnesses not timely or adequately disclosed,
13 at a minimum, *Mr. Kilpatrick should be entitled to rebut any opinions disclosed in the*
14 *report or deposition of St. Paul's expert, if necessary, by recalling him as a rebuttal*
15 *witness after St. Paul's expert testifies.*

16 DATED this 16th day of August, 2007.

17 STAFFORD FREY COOPER

18 By: _____
19 A. Richard Dykstra, WSBA #5114
   Kenneth Hobbs, WSBA #15309
20 Heather L. Carr, WSBA #29780
   Attorneys for Plaintiff Christensen Shipyards, Ltd.

21

---

[1] Due to confusion regarding the impact of the court's summary judgment ruling, Mr. Kilpatrick's
22 deposition originally scheduled for August 1 was cancelled, and was not rescheduled and
   completed until after 10 pm on August 15, following trial proceedings that day. Accordingly, a
23 transcript of the deposition is not yet available. The deposition of St. Paul's expert, Edward
   McKinnon, is now scheduled for Sunday, August 19.

CHRISTENSEN'S FIRST OFFER OF PROOF - 4
2:06-cv-00641-JCC
10650-027858 182897

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

Certificate of Service

I certify that on the date noted below I electronically filed this document entitled CHRISTENSEN'S FIRST OFFER OF PROOF with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

| | |
|---|---|
| James W. Carbin<br>JWCarbin@duanemorris.com<br>Duane Morris, LLP<br>744 Broad Street, Suite 1200<br>Newark, NJ 07102-3889<br>(973) 424-2035<br>FAX: (973) 424-2001<br>  *Attorneys for Defendant St. Paul Fire and Marine Insurance Co.* | Charles C. Huber<br>huberC@lanepowell.com<br>Lane Powell, PC<br>1420 Fifth Avenue, Suite 4100<br>Seattle, WA 98101-2338<br>(206) 223-7265<br>FAX: (206) 223-7107<br>  *Attorneys for Defendant St. Paul Fire and Marine Ins. Co.* |

and I certify that I have caused to be served in the manner noted below a copy of the above-listed document to the following non CM/ECF participants:

[ ]   Via Facsimile
[ ]   Via First Class Mail
[ ]   Via Messenger

DATED this 16th day of August, 2007, at Seattle, Washington.


/s/ Kenneth Hobbs via ECF

CHRISTENSEN'S FIRST OFFER OF PROOF - 5
2:06-cv-00641-JCC
10650-027856 182897

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

```
                    EXCERPT OF PROCEEDINGS
 1
 2   (By Mr. Hobbs):
 3      Q.   And your email says:  He -- meaning Mr.
 4   Marshall -- has
 5   Has requested our position in writing and also wants our
 6   position on how we would proceed if the case is settled
 7   by a jury and they award no damages, et cetera, for
 8   breach of contract claims, would we be willing to agree
 9   that if this occurs we would then reimburse Christensen
10   for all percentages of billings that they may have paid.
11   Do you recall discussing that with Mr. Marshall?
12      A.   I recall him mentioning it, yes.  We did not -- I
13   told him I would need to get back to him on that.
14      Q.   And didn't you tell him you would get back to
15   him, on both your position in writing and the answer to
16   his question, you would try to do it by the end of the
17   week?
18           MR. CARBIN:  Objection, Your Honor, Your
19   Honor has already addressed this.
20           THE COURT:  Overruled.
21   BY MR. HOBBS:
22      A.   Yes, I did.
23      Q.   Did you get back to him within a week?
24      A.   No, I did not.
25      Q.   Why not?
```

```
 1    A.   I got -- I just became very busy and did not get
 2   it done in the time frame.
 3         THE COURT:  Actually, you're correct, I did
 4   rule on this, counsel.  And I'm going to sustain the
 5   objection and strike the last answer.
 6         MR. HOBBS:  Your Honor, at the first
 7   opportunity outside the presence of the jury, I'd like
 8   to make an offer of proof.
 9         THE COURT:  Make it in writing, counsel.
10         MR. HOBBS:  Thank you, Your Honor.
11   BY MR. HOBBS:
12    Q.   You knew when you had this conversation with Mr.
13   Marshall that the mediation was already scheduled for
14   late April?
15    A.   I believe so, yes.
16    Q.   And didn't you also know that the trial date was
17   in late May?
18    A.   Yes, I did.
19    Q.   Did you think that the timing of that proposal
20   was reasonable in light of those upcoming deadlines?
21         MR. CARBIN:  Objection.
22         THE COURT:  Sustained.
23   BY MR. HOBBS:
24    Q.   Take a look at your claim note for the date March
25   20.  It describes your discussion with Mr. Corsale and
```

```
 1  Mr. Carbon, and it says you left a message for Casey
 2  Marshall, but it doesn't describe anything about your
 3  phone conversation with him.  Do you know why that is?
 4              MR. CARBIN:  Your Honor, object to the form
 5  of the question.  Is counsel referring to the fact that
 6  there's something redacted?
 7              (Excerpt Concluded.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```